After long advisement in this case, a bare majority of the Court has adjudged that the plaintiff is entitled to recover pro rata itineris (for I understand Judge SEAWELL as giving no opinion, having been employed in the cause before he left the bar), in which judgment I cannot accord.
Had the plaintiff brought this action on the original contract between these parties, no doubt, I suppose, is entertained by any one but he could not have recovered. If, therefore, he can recover in this form of action, I suppose it is also admitted that it must be upon a new contract, either expressed or implied. And I agree, the plaintiff ought to recover if the facts of the case will warrant the Court in finding the one or implying the other. My brothers, who have decided this cause for the plaintiff, think they do, and that it fairly comes within the principles of Lutwidge v. Grey
and Luke v. Lyde.
The apportionment of freight usually happens when the ship, by reason of any disaster, goes into a port short of the place of destination, and is unable to prosecute or complete her voyage. In such case the master may, if he will and can do so, hire another ship, and so entitle himself to his whole freight; but if he is unable or declines to do this, and the goods are received by the merchant, the general rule of (464) the maritime law is that freight shall be paid pro rata, Abb. on Ship. 336. This rule, I admit, has been adopted by the courts of law both in England and America. But let it be observed that a part of the rule is that the goods are received by the merchant. And I take it that the receipt of the goods by the merchant himself, or by his agent, or some act of his equivalent thereto, is in every instance necessary in order to subject him to the payment of freight pro rata itineris.
In Luke v. Lyde, 2 Burr., 882, and 1 Black., 190, Lord Mansfield said: "It matters not if the goods are spoiled, provided the freighter takesthem"; and he seems to ground himself upon the receipt of the goods by the freighter or merchant, where he says: "There can be no doubt but that some freight is due; for the goods were not abandoned by the freighter, but received by him of the recaptors." In another part of his argument, in speaking of the power and authority of the merchant to exonerate himself from freight, he said: "If he abandons all, he is excused freight; and he may abandon all, though they are not all lost." I need not here quote authority either to prove that upon a total loss no freight is due or to show that this case is one of that description for which no freight was due, or could be demanded or recovered, except the defendants, by some act of theirs subsequent to the stranding of the ship and loss of the cargo, have made themselves liable thereto. *Page 345 
Here I find myself utterly at a loss to discover from this record how the defendants can be subjected to the payment of freight. There is not evidence that they ever received one cent of the property, either from the hands of the owner, master, or commissioners of wreck; nor is there evidence that their insurers did, or indeed, that the part of the cargo saved from the wreck sold for more than the expense of salvage, or for what it sold. The record of the case only proves that the "Defendants abandoned their cargo to their insurers; that it was sold by the commissioners of wrecks, under the authority of the master; and that they, the defendants, became the purchasers." This statement in part (465) proves that no part of the cargo ever did come to the hands of the defendants or their insurers. It is equally silent as to the amount of sales, or how the same was appropriated. This, it would seem to me, puts an end to the question of freight pro rata; for, most clearly, there must be a receipt of the goods by the merchant or some agent of his in order to subject him to freight pro rata itineris. In Lutwidge v. Grey, and Luke v.Lyde, the Court grounded itself upon the receipt of the tobacco saved by the insurers in the first case, and the receipt of the fish by the merchant from the recaptors in the last case.
I have, therefore, no hesitation in deciding that upon the facts set forth in this record the plaintiff ought not to recover.
But, placing this case on the footing the majority of the Court has done, still I am humbly of the opinion the plaintiff is not entitled to recover. This case is circumstanced very different from the case ofLutwidge v. Grey. The owner, in that case, as soon as he was informed of the disaster, gave notice to the merchants that he would provide another ship and complete the voyage. But to that the merchant disagreed, abandoned the cargo to his insurers, and endorsed over to them the bills of lading, and they, the insurers, refused to have the tobacco carried to Glasgow, but took it into their own possession, and upon that statement of facts the cause was decided in Parliament.
We are warranted in this from the words of Lord Mansfield himself, who was of counsel in the cause.
In the trial of Luke v. Lyde, his lordship said: "If a freighted ship becomes accidentally disabled on its voyage without the fault of the master, the master has his option of two things: either to refit it, if that can be done in convenient time, or to hire another ship to carry the goods to the port of delivery. If the merchant disagrees to this, and will not let him do so, the master will be entitled to the whole freight of the full voyage. And so it was determined in the House of Lords, in (466) in the case of Lutwidge v. Grey." *Page 346 
As to the other part of the decision, where the Court decided that freight, in proportion to the part of the voyage performed, was payable, it was upon another principle, namely, that whereas the merchant refused to have his goods shipped on board the vessel that was provided unless the master would sign other bills of lading, which he refused to do, upon which the merchant took the tobacco into possession, which must have been with the consent of the master, or full freight would have been due for that part, also. Hence it was that only freight pro rata was adjudged due and payable. Abb. on Ship., 336.
Upon these two principles, both the cases of Lutwidge v. Grey and Lukev. Lyde were decided. The owner, in the first case, provided another ship and completed the voyage as to that part of the cargo saved by the wreck, and which the merchant agreed he should take on board, and for which he recovered full freight; and freight pro rata only for that part which the merchant refused to put on board, and which the master suffered him to take into possession.
Freight pro rata itineris is never recovered but upon the ground of a new contract to benefit received by the merchant. In Leddard v. Lopes, 10 East, 526, Lord Ellenborough said, Luke v. Lyde has often been pressed beyond its fair bearing. But the true sense of it has been explained by my brother Lawrence, in Cook v. Jennings, 7 Term, 281, and by my brother Le Blanc, in Mullay v. Barker, 5 East, 316. In the cases referred to, Lawrence says: "The owner is not entitled to freight pro rata unless under a new agreement." And he admits that perhaps the receipt of the goods by the merchant might be evidence of a new agreement between the parties. Le Blanc says, "A recovery might be had upon an implied assumpsit, for a benefit already conferred on the merchant, which may be implied from his acceptance of the goods." And he adds: "But here no benefit can be implied to the defendant from the plaintiff." And so I may say here. No benefit can be fairly (467) implied to the defendants in this case. There is no evidence of their acceptance of any part of the cargo; nor, indeed, of their insurers having received any part thereof. In short, there is no evidence of what became of it, other than that it was sold under the direction of the master; and for aught that appears, the master or owner may have received the whole amount of sales, and may have, in virtue of his lien, paid himself. The owner's lien was not defeated by anything set forth in this record; and in case he parted with it, by delivering the part of the cargo saved or the money produced by the sales thereof to any person whatever, he ought to have recourse to such person and no other for his freight, if entitled to any. I feel confident in saying that before freightpro rata in any case can be recovered by any master or owner, it must *Page 347 
appear that his lien has been defeated either with his consent (which I admit implies a contract) or the public act of some government, as an embargo, for instance, hostile in its character, divesting him of the possession of the goods; and in such case, perhaps, he might recover, although they did not come to the possession of the freighter or merchant.
But I cannot accord with the rule that, because the merchant has received the full value of his goods from his insurers, that he is, on that account, liable to pay freight. Such a rule would subject the merchant, in every case where he had insured his property and met with a total loss, to the payment of freight. In every such case he would abandon to the insurer (for the word "abandon," I find, is used even where the loss is total) and be entitled to the full amount of the value of his goods lost. But if such a rule should obtain, it would be at variance with the policy of the maritime law of all countries, as far as I have been informed, which goes not only to deprive the owner of freight in such case, but, also, the hands of wages. It is to be feared such a rule would introduce great negligence, both in the master and mariners (for where there is freight there is wages), which it has always been the policy of all governments to obviate. (468)
I understand the Court, among other reasons for its opinion, to say that the defendants had received full satisfaction from their insurers for the loss of their cargo, and, therefore, it was but reasonable that they should pay freight.
If I should still be in error, it will be a consolation to me that my error will not alter the law in this case nor work an injury. But as at present unprepared, I am obliged to say that I think the plaintiff ought not to recover.